# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFREDO MESTRE, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **WARDEN WAGNER, et al** | : | **NO. 10-7141** |

## MEMORANDUM OPINION

**Savage, J.**                                                                                             **January 31, 2012**

Plaintiff, Alfredo Mestre, Jr. ("Mestre"), a state prisoner, filed this action under 42 U.S.C. § 1983, claiming his rights under the Constitution and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA") were violated when he was not provided a diet conforming to his religious beliefs while being housed in the Berks County Jail System.[1]  He contends that despite his request for a vegan diet consistent with his religion, he was given meals that contained meat or animal by-products three to four times a week. He seeks injunctive[2] and monetary relief.

Mestre has named as defendants three prison officials and a chaplain. The prison officials are: Warden Wagner, who granted Mestre relief in the grievance process; Lieutenant Castro, the prison's grievance coordinator; and Sergeant Svenson, the kitchen

---

[1] This action is one of three Mestre has filed in this court alleging constitutional violations while he had been incarcerated in the Berks County Jail System. In *Mestre v. Wagner*, C.A. No. 11-2191, he claims his being required to eat his meals in his cell, which contains a toilet, violated the Eighth Amendment's ban on cruel and unusual punishment. In *Mestre v. Wagner*, C.A. No. 11-2480, he claims that dietary and day-time mattress restrictions constituted cruel and unusual punishment and violated his substantive due process rights.

[2] Since the filing of his complaint, Mestre has been transferred to SCI-Camp Hill. Accordingly, his demand for injunctive relief is moot. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993))); *Young v. Beard*, No. 10-284, 2011 WL 6372783, at *2 (W.D. Pa. Nov. 28, 2011) ("In the context of prisoner litigation, it is well established that a prisoner-plaintiff's transfer to another institution moots a request for injunctive relief." (citation omitted)).

supervisor. The chaplain, Eileen McKeown, ministers the prison population.

According to his complaint, Mestre, a Buddhist, entered the Berks County Jail System on September 16, 2010.[3] He requested a religious, non-meat diet from a prison officer who is not named as a defendant. Two days later, he started his religious diet, but continued to receive meat or animal by-products with lunch and dinner.

After he complained, he was referred to McKeown, the prison chaplain, who is not a prison employee. On September 21, 2010, she provided him a form to document his request for a diet consistent with his religious beliefs. On the form, Mestre wrote that he does not eat meat or "any product[s] that come from meat" and requested a "vegaintarian [sic] meal." McKeown approved the request.

The following day after dinner, Mestre sent Svenson a "request slip" complaining that he was still receiving food containing animal by-products in his meals. Six days later, Svenson replied that he had not been notified by McKeown that Mestre was vegan, and that Mestre would continue to receive vegetarian meals until he received confirmation that Mestre qualified for a vegan diet. The initial form submitted by McKeown, which was in Mestre's handwriting and signed by him, requested vegetarian, not vegan, meals.

On the same day he received Svenson's reply, Mestre made a second request to McKeown. In that request, he stated that he is a "vegetarian" and clarified that he does not eat meat or "any products that come from an animal." Perceiving that Mestre was asking to be placed on a vegan – as opposed to vegetarian – diet, McKeown approved Mestre's

---

[3] The facts are recited as they are alleged in plaintiff's complaint and exhibits. In light of his *pro se* status, we also considered the exhibits he included with his responses to the motions to dismiss, treating them as amendments to the complaint. The factual allegations are accepted as true and viewed in the light most favorable to the plaintiff.

2

"religious diet: vegan" on September 30, 2010. Mestre continued to receive meat or animal by-products occasionally.[4]

Three weeks later, Mestre filed an emergency grievance, which was denied by Castro because it did not constitute an emergency. Castro directed Mestre to file a standard grievance. Mestre did so the following day. Although the copy of the grievance is difficult to read, it is clear that Castro denied the grievance on October 26, 2010. Mestre's appeal to the Warden, defendant Wagner, was resolved in his favor. On November 8, 2010, he began receiving vegan meals. Thus, his request for a vegan religious diet was ultimately approved.

Mestre alleges that Svenson told him he would continue to receive meat three to four times a week despite his request for a vegan meal. Mestre adds in his response to the prison officials' motion to dismiss that Svenson, as the kitchen supervisor, responded to his September 22, 2010 request by insulting his intelligence and continuing to send him meals containing meat or animal by-products. Thus, according to Mestre, although Svenson "had the opportunity to step in and correct the violation," he failed to do so.

There are no allegations in the complaint that Castro did anything other than deny Mestre's two grievances. In his response to the prison officials' motion to dismiss, Mestre adds that Castro "had the opportunity to stop the violation" but made excuses instead.

The only allegation against Wagner, the warden, is that he played a role in ruling on the appeal. However, Wagner's action resulted in Mestre's getting the diet he requested. In other words, Wagner actually assisted Mestre. Nonetheless, Mestre appears to argue

---

[4] Although McKeown and Svenson wrote on two inmate communication forms provided by Mestre that he was receiving vegetarian meals, Mestre claims he was receiving food containing meat with his meals three to four times a week.

that Wagner, as a supervisor, is liable for the constitutional violations of his subordinates.

Mestre alleges that McKeown had him complete the same form verifying his request for a religious diet. In his response to McKeown's motion to dismiss, Mestre claims that she "had the opportunity to step in and make sure that Sgt. Svenson got [Mestre's] religious diet correct." According to Mestre, her failure to do so, and her "excuses for the delay of [his] religious diet" placed a substantial burden on his religious exercise.

Mestre claims that during the seven weeks before he was regularly provided a religious diet, the defendants violated the RLUIPA, his right to free exercise of religion, and denied him equal protection under the law. He also appears to challenge the manner in which the defendants processed and evaluated his request for a religious diet.

The prison officials challenge the sufficiency of Mestre's complaint under Rule 12(b)(6). In her motion to dismiss, McKeown also raises a failure to state a claim and adds that Mestre cannot maintain a § 1983 claim against her because she was not acting under the color of state law.

After careful review of the complaint, the responses to the motions to dismiss, and the exhibits attached to the pleadings, we conclude that Mestre has failed to state a claim under the RLUIPA and § 1983. Therefore, we shall grant the motions to dismiss.

**Standard of Review**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although this standard "does not require 'detailed factual allegations,' . . . it demands more than an

4

unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

A complaint is subject to dismissal if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). We may also consider documents attached to the complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted). Additionally, the *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). With these standards in mind, we shall accept as true the facts as they appear in Mestre's complaint and draw all possible inferences from these facts in his favor.

## Discussion

Mestre does not claim that any prison regulation substantially burdened his religious exercise. As his complaint acknowledges, the prison has a procedure for providing

inmates with meals conforming to their religious beliefs. His claim is that the seven-week period from his initial request for vegan meals to the time he received such meals violated the RLUIPA, his First Amendment right to free exercise of religion, and his Fourteenth Amendment right to equal protection.

*Religious Land Use and Institutionalized Persons Act Claim*

The RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an inmate unless it demonstrates that the challenged regulation or practice is the least restrictive way to advance a compelling government interest. 42 U.S.C. § 2000cc-1(a). The statute applies to "States, counties, municipalities, their instrumentalities and officers, and persons acting under color of state law." *Sossamon v. Texas*, 131 S. Ct. 1651, 1656 (2011) (citing 42 U.S.C. § 2000cc-5(4)(a)).

To state a cause of action under the RLUIPA, the plaintiff must allege facts showing that the prison's policy or official practice "substantially burdens" the inmate's religious exercise. 42 U.S.C. § 2000cc-2(b); *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007). A substantial burden exists when the policy or practice either (1) forces the inmate to choose between following or abandoning the precepts of his religion, or (2) puts substantial pressure on the inmate to substantially modify his behavior and to violate his beliefs. *Washington*, 497 F.3d at 280. Therefore, "a prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009).

Mestre maintains that providing him meals containing meat or animal by-products three or four times a week imposed a substantial burden because his religion forbids him from eating such foods. However, he alleges no facts that the delay in granting his request

for vegan meals forced him to chose between adhering to his religious beliefs and eating enough to get adequate nutrition. *See Walker v. Wright*, No. 09-1177, 2010 WL 4068945, at *2 (C.D. Ill. Oct. 15, 2010) (dismissing inmate's claim that the prison diet did not meet his religious and nutritional needs because he offered "no evidence that he suffered any nutritional deficiencies, medical problems, or illness caused by the meals served").

Mestre has not alleged that he was forced to consume any of the meat or animal by-products provided in some of his meals. Nor does he claim that he skipped meals or did not receive adequate nutrition. Instead, he acknowledges that he sold or traded the non-conforming food.[5] Mestre has pleaded no facts demonstrating that he had to abandon the precepts of his religion or that the defendants put pressure on him to substantially modify his behavior or violate his beliefs. At best, his allegations amount to a claim that the defendants delayed the process. Hence, he has failed to allege facts making out the substantial burden element of a cause of action under the RLUIPA. *See Heleva v. Kramer*, 330 F. App'x 406, 409 (3d Cir. 2009) (withholding two religious books for a period of eight months "designed to uphold and strengthen petitioner's faith in God" did not violate the RLUIPA because "[a]t no point did [the inmate] have to abandon one of the precepts of his Christian religion, nor did the government put pressure on him to substantially modify his behavior or violate his beliefs").

Absent allegations of such facts, Mestre cannot make out a violation of the RLUIPA

---

[5] This case stands in stark contrast to *Nelson v. Miller*, where the court held that a chaplain's denial of an inmate's request for a non-meat diet on Fridays and during Lent substantially burdened his religious practice because the inmate, in abstaining from all meat, had to be hospitalized due to weight loss. 570 F.3d at 880. He also testified that his "bones began to protrude, he was cold, and he was depressed and anxious." *Id*. A dietician also acknowledged that "there was probably insufficient nutrition in the regular diet if all the meat were skipped." *Id*. Here, however, Mestre has pleaded no facts indicating that in selling the meat or animal by-products in his meals, or trading them for other food items, he received insufficient nutrition.

based on the seven-week period between his initial request for a vegan diet and the prison providing him vegan meals. Once Mestre initiated the grievances process, the prison processed his complaint and ultimately granted him relief. He makes no allegation that the prison officials failed to follow the grievance protocol or otherwise impeded the process.

Moreover, as Mestre's complaint reveals, he waited a month before filing his first grievance.[6] Once Mestre initiated the grievance process, the prison processed his complaint and granted his request within two weeks.

### *42 U.S.C. § 1983 Claims*

To state a § 1983 claim,[7] a plaintiff must allege facts, which if proven, would establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) the person causing the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted).

Mestre claims that the delay in providing him vegan meals prevented him from exercising his religion in violation of the Free Exercise Clause of the First Amendment[8] and the Equal Protection Clause of the Fourteenth Amendment.[9] Mestre also appears to

---

[6] According to Mestre, he "was placed on a religious vegan diet on 9-21-10 a full month before [he] filed [his first] grievance." Pl.'s Mot. to Strike Mot. to Dismiss, at 2.

[7] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

[8] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[9] "[N]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

challenge the grievance process.

To the extent that Mestre challenges the grievance process, his § 1983 claim fails. Although an inmate has a constitutional right to file a grievance, *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003); *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006), he does not have a constitutionally protected right to a particular grievance procedure. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Therefore, Mestre "cannot maintain a constitutional claim based on his perception that his grievances were not properly processed, investigated, or that the grievance process is inadequate." *Owens-Ali v. Pennell*, 672 F. Supp. 2d 647, 655 (D. Del. 2009); *see also Heleva*, 214 F. App'x at 247 ("[D]efendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim."); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (citing cases from the Fourth, Eighth, Seventh, and Ninth Circuits).

There is, under the Free Exercise Clause, "a constitutional right not to be forced into a Hobson's choice of either eating food items which offend one's religious beliefs, or eating very little or not at all." *Norwood v. Strada*, 249 F. App'x 269, 272 (3d Cir. 2007). However, Mestre pleads no facts demonstrating he was forced into making such a choice.[10] Indeed, his allegations are to the contrary. He sold or bartered his food for substitute meals. By his own allegations, he managed to nourish himself while his grievance was in process.

---

[10] Although some circuits have held that plaintiffs must demonstrate a "substantial burden" for both RLUIPA and Free Exercise Claims, the Third Circuit has not. *See Heleva*, 214 F. App'x at 247 n.2 ("We have not imposed a 'substantial burden' requirement on [free exercise] claims." (citations omitted)).

From the time he made his initial request to when he was given vegan meals, Mestre alleges that he had access to other food that conformed to his religiously-mandated diet. Nothing in the complaint or the exhibits shows that he felt compelled or pressured to eat – or that he did eat – meat or food containing animal by-products. Nor does he allege that he was prevented from practicing his religion or exercising his religious beliefs in any way. Thus, Mestre has not pleaded facts that would, if proven, demonstrate any limitation on his free exercise rights. *See Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002) (holding that even if an inmate is given food items that do not conform to his religious beliefs, this does not violate the free exercise clause if the other food provided to him "is sufficient to sustain the prisoner in good health").

Despite a delay in processing, Mestre's request for vegan meals was granted after he followed the prescribed grievance process. The delay, without more, is insufficient to make out a constitutional violation. For example, in *Tapp v. Proto*, 404 F. App'x 563 (3d Cir. 2010), the Third Circuit held that a two-week delay in granting a request for Kosher meals was a "short delay," which did not impinge on the inmate's free exercise rights. *Id.* at 565. Although Mestre's wait was five weeks longer, he contributed to the delay by letting three weeks pass before filing a grievance; and, once he did, the prison processed the grievance within two weeks, resulting in his receiving vegan meals.

Prison officials are not required to grant an inmate's request without inquiry. They may verify the sincerity of the inmate's religious beliefs. *See Washington*, 497 F.3d at 277 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13). "[A] prison is entitled to assess whether an inmate's dietary requirements are motivated by 'sincerely held' religious beliefs . . . ." *Tapp*, 404 F. App'x at 565 (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000)).

Consequently, prison officials are afforded a reasonable period of time necessary to conduct such an inquiry. If prison officials were required to serve special meals upon demand without verification, the costs would be inordinate and the prison kitchen turned into a restaurant.[11]

Mestre's complaint also fails to state a claim under the Equal Protection Clause. "To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). Mestre has not pleaded any facts that he was treated differently than any other inmate in the same situation. Therefore, he has failed to state a claim under the Equal Protection Clause.

*Warden Wagner and Lieutenant Castro*

Liability under § 1983 cannot be predicated solely on a *respondeat superior* theory. *Iqbal*, 129 S. Ct. at 1949 (2009); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citation omitted). Individual liability can only be imposed under § 1983 if a defendant played an "affirmative part" in the alleged misconduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Personal involvement by a defendant may be demonstrated by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. *Id.* Such allegations "must be made with appropriate

---

[11] Because we find that the facts as alleged by Mestre do not indicate that any regulation or action impinged upon his free exercise rights, we need not consider whether any implicated regulation or action "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see, e.g.*, *Tapp*, 404 F. App'x at 565 (dismissing free exercise claims without analyzing any prison regulation under *Turner* because the prison's delay in honoring the inmate's request for Kosher meals did not impinge on his free exercise rights).

particularity." *Id.*

Mestre's only allegations against Wagner and Castro are that they played roles in ruling on his grievances and "made up excuses for the violation." These allegations do not state a claim under § 1983. A prison official's participation in the review of a grievance is not enough to establish personal involvement. *Collins v. Williams*, 575 F. Supp. 2d 610, 615 (D. Del. 2008) (citing *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006)). Mestre's allegations actually absolve Wagner of any complicity or liability. He contends Wagner granted him relief when his complaint made its way to him through the grievance process. There are no allegations that Wagner and Castro had actual knowledge and acquiesced to the other defendants' actions, which resulted in Mestre not receiving his vegan diet sooner. Therefore, even assuming he had adequately pleaded a constitutional deprivation, Mestre has failed to state a cause of action against Wagner and Castro.

*Chaplain McKeown and Sergeant Svenson*

Mestre cannot impose liability upon McKeown by alleging that he was asking for vegan meals when his first request, included as an exhibit to his pleadings, indicates that he was asking for vegetarian meals. McKeown granted this request and Svenson processed this approval, telling Mestre that he was already on the list to receive vegetarian meals.

McKeown later approved Mestre's request for vegan meals. Mestre does not allege that McKeown had any part in his occasionally receiving meat or animal by-products in his meals. Giving him the benefit of the doubt, Mestre's claim against McKeown appears to be that she was negligent, which does not rise to the level of a violation of the RLUIPA or his constitutional rights. *See Lovelace v. Lee*, 472 F.3d 174, 196 (4th Cir. 2006) (holding

evidence that prison officials acted negligently fails to support a claim under the RLUIPA); *Thompson v. Scott*, 86 F. App'x 17, 18 (5th Cir. 2004) ("Negligence does not suffice to support a section 1983 claim.").

McKeown also argues that Mestre cannot state a §1983 claim against her because she was not acting under the color of state law in helping the prison to process his request for vegan meals.[12] In her motion, she points out that she is employed by the Reading Berks Conference of Churches, not the Department of Corrections. In responding, Mestre concedes her volunteer status, but adds that "Chaplain McKeown [sic] job maded [sic] her an entity acting under color of state law."[13]

The Third Circuit has not determined whether a prison chaplain may be considered a state actor.[14] The courts of appeals that have addressed the issue have adopted different approaches, resulting in contrary outcomes.[15] Pursuant to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982), courts often determine whether a chaplain-defendant's

---

[12] Although not raised by Chaplain McKeown, the RLUIPA also applies to any person "acting under color of State law." 42 U.S.C. § 2000cc-5(4)(A)(iii).

[13] Pl.'s Mot. to Strike Mot. to Dismiss, at 2 (Doc. 34).

[14] One district court in the Third Circuit addressed this issue and held that a full-time prison chaplain, employed by a private organization, was acting under the color of state law in engaging in a consensual sexual relationship with an inmate when he was supposed to be giving her spiritual guidance. *Stubbs v. DeRose*, No. 03-2362, 2007 WL 776789, at *3-5 (M.D. Pa. Mar. 12, 2007); *cf. Pineda-Morales v. De Rosa*, No. 03-4297, 2005 WL 1607276, at *14 (D.N.J. July 6, 2005) (holding that defendant-chaplains are state actors under the RLUIPA's predecessor statute, the Religious Freedom Restoration Act (RFRA), but distinguishing § 1983 "under color of State law" requirement from that of the RFRA's).

[15] *Compare Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir. 1997) (holding that prison chaplain's decision to bar inmate from religious service based on the inmate's beliefs was an ecclesiastical, not an administrative or managerial function, and therefore the chaplain was not operating under the color of state law), *and Florer v. Congregation Pidyon Shevuyim*, 639 F.3d 916, 927 (9th Cir. 2009) (relying, in part, on *Montano* and holding that chaplain was not operating under the color of state law in denying inmate's request for a Torah, Jewish calendar, and visit from rabbi based on chaplain's determination that inmate was not Jewish), *with Phelps v. Dunn*, 965 F.2d 93, 102 (6th Cir. 1992) (holding prison chaplain was acting under the color of State law in barring a gay inmate from attending religious services because the chaplain's "right to conduct services in the prison chapel was a privilege created by the state").

challenged conduct served an ecclesiastical or administrative function in determining whether her conduct is fairly attributable to the state.  *See Florer v. Congregation Pidyon Shevuyim*, 639 F.3d 916, 924-25 (9th Cir. 2011); *Montano v. Hedgepeth*, 120 F.3d 844, 851 (8th Cir. 1997).  Because Mestre has not stated a claim under the RLUIPA or § 1983, we need not determine whether McKeown was acting under color of state law.

## Conclusion

Having failed to state a claim under the RLUIPA and § 1983, Mestre's complaint shall be dismissed with prejudice.  Because any attempt to cure the deficiencies would be futile, we shall not grant leave to amend the complaint.